J-S14033-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                :              PENNSYLVANIA
                :
            v.              :
                :
                :
BRIAN J. O'DOHERTY        :
                :
        Appellant      :    No. 1606 MDA 2023

Appeal from the PCRA Order Entered November 14, 2023
In the Court of Common Pleas of Schuylkill County Criminal Division at
No(s): CP-54-CR-0001958-2018

BEFORE: LAZARUS, P.J., PANELLA, P.J.E., and MURRAY, J.

MEMORANDUM BY MURRAY, J.:       **FILED: JUNE 17, 2024**

Brian J. O'Doherty (Appellant) appeals from the order denying his first petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546. After careful review, we affirm.

The PCRA court detailed the history underlying this appeal:

> On May 30, 2018, a search warrant was executed at the residence of Anthony Nelson [(Nelson)], 222 South Street, Minersville, Pennsylvania [(the residence)]. [Appellant] was present in the [] residence at the time of the search,[1] and as a result[,] was arrested and charged with various crimes. During the search, police recovered two cell phones [(the phones)] in the vicinity of [Appellant]. On June 6, 2018, Minersville Police Officer Jeffrey Bowers [(Officer Bowers)] applied for and obtained two search warrants concerning the … phones owned by [Appellant].
>
> On April 4, 2019, after a criminal jury trial, [Appellant] was convicted of: two counts of possession with intent to deliver [(PWID)] (heroin); P[WID] (methamphetamine); criminal

---

[1] Appellant did not reside at the residence.

conspiracy to [commit PWID]; possession of drug paraphernalia; and possession of a small amount of marijuana. The basis of [Appellant's] conviction[s] was the execution of the search warrant … at the [] residence[,] at which time [Appellant] was the only person present in the home. (N.T.[,] 4/4/19, pp. 26-30). Police recovered a silver [lock]box found at [Appellant's] feet containing methamphetamine and heroin. (*Id.* at 32, 36, 39, 41).

[Notably, Appellant's] co-defendant[,] Nelson[,] testified at [Appellant's] trial on behalf of the Commonwealth. Nelson testified that he arrived at [the residence] in [Appellant's] car after police had arrived to execute the search warrant. (*Id.* at 67). He described in great detail the drug selling operation he and [Appellant] ran. (*Id.* at 71-80). Nelson stated that [Appellant] would keep his drugs in a lockbox. (*Id.* at 77). [Nelson] testified that when he departed the [residence] prior to police arriving, the lockbox was in front of [Appellant] in the living room. (*Id.* at 80). After [Nelson] and [Appellant] had been arrested …, [Appellant] whispered to Nelson that Nelson should take responsibility for the controlled substances because [Appellant] already had pending charges. (*Id.* at 81). Nelson later took responsibility for the controlled substances by testifying under oath at a hearing on June 22, 2018…. (*Id.* at 82, 90). However, at the time of [Appellant's] trial[,] Nelson testified that he had lied under oath when he took responsibility for the drugs that were found. (*Id.* at 82). Nelson claimed he lied because he was informed that [Appellant] would put a "hit" out on him if Nelson did not take responsibility for the drugs. (*Id.* at 83). On cross-examination, Nelson testified that a corrections officer named "Oliver"[2] told him that [Appellant] would put a hit out on [Nelson] while he was incarcerated, and that is why [Nelson] testified falsely in the past. (*Id.* at 100). C.O. Oliver was not called to testify at trial by either the Commonwealth or [Appellant].

During closing argument, [Appellant's] trial counsel, Jay Nigrini, Esquire [(trial counsel)], emphasized the false statement made by Nelson in Nelson's prior testimony…. (*Id.* at 137). [Trial counsel] also argued there was a lack of corroboration of Nelson's statement by any other Commonwealth witnesses. (*Id.* at 138).

---

[2] Prior to trial, Appellant and Nelson were incarcerated at the Schuylkill County Prison, the place of employment of Corrections Officer Fernando Oliver (Oliver or C.O. Oliver). *See* N.T., 9/7/21, at 3.

The jury convicted [Appellant of the above-described charges]. On May 7, 2019, the [trial court] … sentenced [Appellant] to an aggregate term of incarceration of 4 to 10 years.

On June 3, 2019, [Appellant] filed an appeal to the Superior Court of Pennsylvania.

* * *

On July 8, 2021, the Superior Court issued an [unpublished memorandum vacating Appellant's judgment of sentence, and] remanding the case to the trial court for an evidentiary hearing[,] after recognizing [that Appellant] had advanced a claim of [after-]discovered evidence [before the trial court].[3]  The Superior Court recognized [Appellant's] claim that C.O. Oliver approached him after trial and told him of an interview with the district attorney[,] in which Oliver denied that [Appellant] conveyed to Oliver a threat towards Nelson.  The Superior Court … analyzed the claim as one of after-discovered evidence.  The Superior Court also recognized [Appellant's] claim that the search warrant was insufficiently specific.  However, a complete copy of the search warrant and affidavit in support thereof were not included in the certified record; therefore, the Superior Court directed [Appellant's] counsel to include [on remand] a complete copy of the search warrant and affidavit.

PCRA Court Opinion, 11/14/23, at 1-3 (footnotes added; capitalization modified).

On remand, the trial court held an evidentiary hearing on September 7, 2021 (September 2021 hearing).  C.O. Oliver testified that he never communicated any threats from Appellant to Nelson while the men were incarcerated together.  N.T., 9/7/21, at 4.  C.O. Oliver stated that prior to

---

[3] *See Commonwealth v. O'Doherty*, 260 A.3d 121, 903 MDA 2019 (Pa. Super. 2021) (unpublished memorandum at 12).

- 3 -

Appellant's trial, (1) the defense never contacted him to discuss the issue of Appellant's purported threat, *id.* at 9; and (2) the prosecutor involved in Appellant's case contacted him, as "[t]hey were trying to find out if I passed a threat. And there were never any threats passed." *Id.* at 4.

At the September 2021 hearing, trial counsel testified that he received discovery in Appellant's case in February 2020, two months before trial. *Id.* at 13, 15. The discovery contained a handwritten statement by Nelson

> detailing certain allegations surrounding the investigation, including an allegation … that a correctional officer had passed on a communication from [Appellant] to Mr. Nelson.

*Id.* at 15. Trial counsel confirmed that the discovery made no mention that "Oliver had denied delivering any messages to Mr. Nelson on behalf of [Appellant.]" *Id.* at 13. Trial counsel admitted he never attempted to contact C.O. Oliver. *Id.* at 15.

On December 1, 2021, the trial court issued an order and opinion, ruling, in relevant part, Appellant was not entitled to relief on his after-discovered evidence claim. The trial court reasoned, (1) the testimony of C.O. Oliver would not have changed the outcome of Appellant's trial; and (2) the defense would have offered such evidence only for impeachment of Nelson. *See* Trial Court Opinion, 12/1/21, at 5-6. On December 7, 2021, the trial court reimposed an aggregate sentence of 4 to 10 years in prison.

On December 30, 2022, Appellant, *pro se*, timely filed the instant PCRA petition, his first, raising several claims of trial counsel's ineffectiveness.

- 4 -

Relevantly, Appellant claimed trial counsel was ineffective for failing to (1) file a pre-trial motion to suppress evidence seized from the residence; (2) file a motion to suppress the phones; and (3) interview C.O. Oliver and present his testimony at trial. ***See generally*** PCRA Petition, 12/30/22. The PCRA court appointed Appellant counsel, who filed an amended PCRA petition on April 27, 2023. The PCRA court held an evidentiary hearing on August 25, 2023 (PCRA hearing); trial counsel and Appellant were the only witnesses.

Relevantly, trial counsel testified at the PCRA hearing that he did not file any pre-trial motions to suppress evidence. N.T., 8/25/23, at 8. Trial counsel confirmed it was his professional opinion that "there was [not] anything to challenge in these search warrants…." ***Id.*** at 11. Appellant's PCRA counsel asked trial counsel, "[A]s part of your procedure, do you normally try to suppress search warrants?" ***Id.*** Trial counsel responded as follows:

> A. If I believe that there is merit to … [the] issues raised, then yes, I would file suppression motions. I've been doing criminal defense work for more than 20 years. I investigate potential issues that can be raised in a pretrial motion. I believe my review of the evidence in this case, that there was no merit to filing a motion to suppress for the residence or either of the [] phones.
>
> In fact, [Appellant] had indicated to me that he … was just beginning to smoke a blunt of marijuana at the time that law enforcement came in to execute the search warrant. And **because this was not his residence, [Appellant] did not have a reasonable expectation of privacy in the search of the residence**….

***Id.*** at 11-12 (emphasis added).

Trial counsel elaborated on cross-examination:

A. [] The search warrant for the residence in question here was [] Nelson's residence. [Appellant] did not reside with [] Nelson. Very early in our conversations, [Appellant stated] he resided elsewhere; that he had come over to visit with Mr. Nelson the morning of [execution of] the search warrant.

*Id.* at 13-14. According to trial counsel, "**Our defense at trial was that [Appellant] came over to visit Mr. Nelson**;" all contraband in the residence "belonged to Mr. Nelson;" and Appellant "was at the wrong place at the wrong time." *Id.* at 14-15 (emphasis added). Trial counsel further explained, "based upon my review of the case law and experience, I did not see any merit in challenging the legality of the search warrants for [the] phone[s]." *Id.* at 15; *see also id.* at 10 (trial counsel confirming, had "the search warrant for the [residence] [] been suppressed, … the two search warrants for the [] phones would have also been automatically suppressed….").

On November 14, 2023, the PCRA court denied Appellant's PCRA petition. This timely appeal followed. Appellant and the PCRA court have complied with Pa.R.A.P. 1925.

Appellant presents three issues for review:

I. Were the search warrants for the residence and [Appellant's] cell phones lacking in probable cause?

II. Were the search warrants for the residence and [Appellant's] cell phones over broad in what was to be searched for?

III. Was [trial] counsel ineffective in [his] assistance by:

A. Failing to move for suppression of the search warrant for the [residence?]

- 6 -

        B. Failing to move for suppression of the search warrant for [Appellant's] cell phones[?]

        C. Failing to interview and have a witness testify at trial[?]

Appellant's Brief at 5-6 (capitalization modified).

When reviewing the denial of a PCRA petition, we examine "whether the PCRA court's conclusions are supported by the record and free from legal error." **Commonwealth v. Johnson**, 289 A.3d 959, 979 (Pa. 2023) (citation omitted).

> The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record. This Court grants great deference to the findings of the PCRA court, and we will not disturb those findings merely because the record could support a contrary holding. In contrast, we review the PCRA court's legal conclusions *de novo*.

**Commonwealth v. Maxwell**, 232 A.3d 739, 744 (Pa. Super. 2020) (*en banc*) (citations omitted). A PCRA petitioner "has the burden of persuading th[e appellate] Court that the PCRA court erred and that such error requires relief." **Commonwealth v. Montalvo**, 205 A.3d 274, 286 (Pa. 2019).

Here, in his first two issues, Appellant claims the search warrants for the residence and the phones were unlawful, as being overbroad and unsupported by probable cause. **See** Appellant's Brief at 13-27. However, these claims are not cognizable under the PCRA. Generally, claims of trial court error, other than those enumerated in 42 Pa.C.S.A. § 9543(a)(2)(i-viii), are not cognizable. Furthermore, Appellant waived these claims for not having raised them in a pre-trial motion to suppress or on direct appeal. **See id.** §

9544 ("For purposes of [the PCRA], an issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding."); *see also Commonwealth v. Wharton*, 811 A.2d 978, 984-85 (Pa. 2002).

We next address Appellant's third issue, which contains three separate sub-issues asserting trial counsel's ineffectiveness. *See* Appellant's Brief at 28-35. Ineffectiveness claims are cognizable under the PCRA. *See* 42 Pa.C.S.A. § 9543(a)(2)(ii). Further, it is undisputed that Appellant pled his ineffectiveness claims in a timely PCRA petition. *See id.* § 9545(b)(1) (mandating all PCRA petitions "shall be filed within one year of the date the judgment becomes final").

Our analysis begins with the well-settled presumption that counsel is effective; a PCRA petitioner bears the burden of proving otherwise. *Commonwealth v. Brown*, 196 A.3d 130, 150 (Pa. 2018). To overcome this presumption, a PCRA petitioner must plead and prove each of the following three prongs:

> (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's action or failure to act; and (3) he suffered prejudice as a result of counsel's error, with prejudice measured by whether there is a reasonable probability the result of the proceeding would have been different. *Commonwealth v. Chmiel*, 30 A.3d 1111, 1127 (Pa. 2011) (employing ineffective assistance of counsel test from *Commonwealth v. Pierce*, 527 A.2d 973, 975-76 (Pa. 1987)). … Additionally, counsel cannot be deemed ineffective for failing to raise a meritless claim. Finally, because a PCRA petitioner must establish all the *Pierce* prongs to be entitled to relief, we are not required to analyze the elements of an ineffectiveness claim in any specific order; thus, if a claim

- 8 -

fails under any required element, we may dismiss the claim on that basis.

**Commonwealth v. Treiber**, 121 A.3d 435, 445 (Pa. 2015) (citations modified). "When evaluating ineffectiveness claims, judicial scrutiny of counsel's performance must be highly deferential." **Commonwealth v. Lesko**, 15 A.3d 345, 380 (Pa. 2011) (citation and quotation marks omitted).

Appellant first asserts trial counsel was ineffective for failing to file a motion to suppress evidence police discovered upon executing the search warrant for the residence. **See** Appellant's Brief at 28-30. According to Appellant, he

> had standing [to challenge the search warrant] due to the possessory charges. The search warrants [*sic*] probable cause was vague and non-specific and based on, according to [Officer Bowers'] testimony, only one [] "garbage pull,"[4] a "garbage pull" that contained no identifiable information as to what specific residence it was associated with.

**Id.** at 28 (footnote added). Appellant claims that had trial counsel filed a suppression motion, "the search warrant would have been suppressed and the outcome of the challenged proceeding would have been different." **Id.** at 30.

---

[4] Our Supreme Court has explained a "garbage pull" or "trash pull" is the police "investigation of discarded trash from a residence." **Commonwealth v. Leed**, 186 A.3d 405, 414 n.5 (Pa. 2018) (citation omitted)); **see also** N.T., 4/4/19 (jury trial), at 26 (Officer Bowers testifying that a "[t]rash pull is an operation … commonly [] conducted by law enforcement," … where "once trash is discarded from the home, [officers] take the trash and then return it to our … police station and look through the trash [] for items indicative of drug dealing….").

The Commonwealth counters Appellant's underlying claim lacks arguable merit, "since he failed to establish [he had] a reasonable expectation of privacy" in the residence, where he was "a mere visitor at the home when it was raided by the police." Commonwealth's Brief at 12.

"A defendant moving to suppress evidence has the preliminary burden of establishing standing and a legitimate expectation of privacy." *Commonwealth v. Burton*, 973 A.2d 428, 435 (Pa. Super. 2009) (*en banc*). "[A] defendant accused of a possessory crime who seeks to challenge a search and seizure … has automatic standing … to maintain that challenge." *Commonwealth v. Sell*, 470 A.2d 457, 468 (Pa. 1983) (internal quotation marks omitted); *see also* Appellant's Brief at 29 (arguing he has automatic standing pursuant to *Sell*). Nevertheless, in order to prevail on a suppression motion,

> a defendant is required to separately demonstrate a personal privacy interest in the area searched or effects seized, and support that such interest was "actual, societally sanctioned as reasonable, and justifiable."

*Commonwealth v. Bostick*, 958 A.2d 543, 551 (Pa. Super. 2008) (quoting *Commonwealth v. Peterson*, 636 A.2d 615, 617 (Pa. 2008)). "[I]f the evidence of the Commonwealth, the party with the burden of production, shows the defendant lacked such a privacy interest," the Commonwealth "need prove no more." *Commonwealth v. Enimpah*, 106 A.3d 695, 701, 702 (Pa. 2014).

This Court in *Bostick* explained that

[f]actors to be considered in determining whether a defendant has a legitimate expectation of privacy in another person's home include: (1) possession of a key to the premises; (2) having unlimited access to the premises; (3) storing of clothing or other possessions on the premises; (4) involvement in illegal activities conducted on the premises; (5) ability to exclude other persons from the premises; and (6) expression of a subjective expectation of privacy in the premises.

*Bostick*, 958 A.2d at 553 (citation and brackets omitted); *see also Commonwealth v. Govens*, 632 A.2d 1316, 1319 (Pa. Super. 1993) (*en banc*) (stating a "casual visitor who is merely present in another[] person's home does not have a legitimate expectation of privacy to contest an illegal entry by police into that home;" a defendant who is more than a casual visitor "must demonstrate a significant and current interest in the searched premises in order to establish an expectation of privacy." (citations and brackets omitted)).

Instantly, by means of background, Officer Bowers testified at the September 2021 hearing that he was the affiant for the search warrant of the residence. N.T., 9/7/21, at 18. Officer Bowers stated (1) the police conducted a "trash pull" at the residence on the same day police executed the search warrant; and (2) the search warrant was based, in part, on evidence seized from this trash. *See id.* at 19-24. Upon questioning by Appellant's counsel, Officer Bowers confirmed, "Nowhere in [the] affidavit [of probable cause accompanying the search warrant] is it listed that there was any evidence of ownership in any of th[e] six bags of garbage" police obtained in the trash pull. *Id.* at 24.

The PCRA court determined Appellant's underlying claim lacked arguable merit, reasoning as follows:

> [Trial counsel], who has been practicing criminal law since 2001 and has reviewed hundreds of search warrants during his career, testified at the PCRA hearing … that he did not file any pretrial motions to suppress the search warrants. After review, he had no concerns about the search warrants. In his professional opinion, he felt there was nothing to challenge in the search warrants and that there was no merit in filing a suppression motion. [Trial counsel] explained **the search was of Nelson's home, of which** [**Appellant**] **had no expectation of privacy**.

PCRA Court Opinion, 11/14/23, at 9 (emphasis added).

The PCRA court elaborated:

> [T]he affidavit described a trash pull performed [at the residence] on the same date the warrant was issued. (5/29/18 search warrant, pp. 5-6). The search warrant affidavit also reflects this trash pull resulted in the discovery of mail from [the residence,] as well as items indicative of narcotics trafficking, including glassine baggies, blunts, wrapper paraphernalia, and methamphetamine residue. (*Id.*). The affidavit described complaints by neighbors regarding excessive foot traffic in and out of the residence, which is consistent with drug related activity. (*Id.* at 5). Lastly, the affidavit described the surveillance conducted by police[,] who confirmed that known drug users were entering and exiting the residence. (*Id.* at 6). Clearly, the information in its totality established the requisite probable cause for the issuance of the search warrant. (*See Commonwealth v. James*, 69 A.3d 180 (Pa. 2013)).
>
> In fact, prior to trial[, trial counsel] reviewed the affidavit and he determined that there was probable cause for [the search warrant's] issuance and the search of the [residence]. [Trial counsel's] determination is not a result of ineffective representation. The Commonwealth points out that even if [trial counsel] had filed a motion [to suppress] as a result of the search warrant lacking probable cause, Officer Bowers' testimony at [trial] established probable cause existed by his outlining the surveillance, foot traffic, and items recovered in the trash pull. (N.T. 4/4/19, pp. 25-28). [Appellant] had no expectation of

- 12 -

privacy in the residence … because [he] was a **visitor** at the [residence].  [Appellant], bearing the burden of proof in this PCRA action, failed to establish … any right to an expectation of privacy at [the residence].

PCRA Court Opinion, 11/14/23, at 7 (emphasis in original).

The PCRA court's foregoing reasoning is supported by the law and the record, and we agree with its conclusion.  As Appellant was merely a casual visitor of the residence and had no reasonable expectation of privacy in it, trial counsel had no reason to seek suppression of evidence officers seized during the search of the residence.  ***See Treiber***, 121 A.3d at 445 (noting counsel cannot be deemed ineffective for failing to raise a meritless claim); ***see also Enimpah***, 106 A.3d at 701-02.  Appellant's first ineffectiveness claim merits no relief.

Next, Appellant argues the PCRA court improperly rejected his ineffectiveness claim based on trial counsel's failure to seek suppression of the phones because of the purportedly defective search warrant.  ***See*** Appellant's Brief at 30-32.  According to Appellant, the Commonwealth failed to prove his constructive possession of the phones.  ***Id.*** at 36 ("Proximity to contraband is not a sufficient link to justify a search warrant.").  Appellant claims prejudice because, had trial counsel filed a motion to suppress the phones,

based on the lack of probable cause and the lack of specificity to connect the phones to the crimes charged, the search warrant would have been suppressed and the outcome of the challenged proceeding would have been different.

*Id.* at 32.

The Commonwealth counters the PCRA court properly rejected Appellant's ineffectiveness claim, where it is "apparent that probable cause existed for the search of the [] phones." Commonwealth Brief at 13.

> Appellant had a large amount of cash on his person, and one of the phones rang continuously in the presence of law enforcement. The [] phones were found in the same room as the salable amounts of [narcotics].… Also, packaging materials and a digital scale were found in close proximity to the phones.

*Id.* at 13-14. Accordingly, the Commonwealth claims, Appellant's ineffectiveness claim lacks arguable merit. *Id.* at 14; *see also id.* ("While Appellant had a right to argue that the Commonwealth failed to prove constructive possession at the time of trial, that is a different standard for a different stage in the proceedings."). We agree.

> As the PCRA court opined,

> both affidavits of probable cause [for the phones] reflect probable cause existed for the search of each cell phone. (6/6/18 search warrants, pp. 5-6). [Appellant] had $286.00 on his person and [one of the] phone[s] rang continuously for 90 minutes while in the presence of law enforcement. The phones were located in the same room with a large, saleable amount of methamphetamine, heroin[], and marijuana[,] as well as packaging material and digital scale. (*Id.*) …[T]here was ample probable cause contained in both search warrant affidavits.

PCRA Court Opinion, 11/14/23, at 8-9. The PCRA court further credited trial counsel's testimony at the PCRA hearing that

> **there were no grounds to try to suppress the validity of the search warrant concerning the phones because the original search warrant for [the] residence allowed the police to seize the phones discovered[,] while the drug**

- 14 -

**paraphernalia found near the phones provided the requisite nexus giving the police probable cause to search the phones**. [Trial counsel's] actions are consistent with our view of the search warrants….

*Id.* at 9 (emphasis added).

As the PCRA court's reasoning is supported by the law and the record, we affirm on this basis with respect to Appellant's second ineffectiveness claim. *See id.*

In his third and final ineffectiveness claim, Appellant argues trial counsel rendered ineffective assistance for failing to investigate C.O. Oliver and present his testimony at trial. *See* Appellant's Brief at 32-35. According to Appellant,

the testimony of Oliver was of vital importance as it would have been used to impeach the testimony of [Nelson], the same co-defendant who testified at the trial that he had lied in the past about who the drugs belonged to.

*Id.* at 34 (capitalization modified).

The Commonwealth counters "this issue is waived for PCRA purposes because it has been previously litigated." Commonwealth Brief at 14; *see also id.* ("In examining Appellant's claim about Oliver's testimony, it really is a claim of after-discovered evidence."). We agree.

As the PCRA court cogently reasoned in its opinion,

Th[e] issue raised by [Appellant] is a claim of after-discovered evidence. However, **extensive testimony was already taken at the September** [] **2021 … hearing** [**on this issue, and the trial court**], **in** [**its**] **December 1, 2021, Opinion**[,] **denied relief on this issue.** [**Appellant**] **has, therefore, waived this issue for PCRA purposes.** An issue has been previously litigated

if the highest appellate court in which the petitioner could have had review has ruled on the merits of the issue or the issue has been raised and decided in a proceeding collaterally attaching the conviction or sentence. ***Commonwealth v. Crawley***, 663 A.2d 676[, 678] (Pa. 1995). An issue that has been previously litigated is not reviewable under the P[CRA]. ***Commonwealth v. Travaglia***, 661 A.2d 352[, 356] (Pa. 1995).

To establish PCRA eligibility on the basis of after-discovered evidence, a petitioner must prove that 1) the evidence has been discovered after trial and it could not have been obtained at or prior to trial through reasonable diligence; 2) the evidence is not cumulative; 3) it is not being used solely to impeach credibility; and, 4) it would likely compel a different verdict if a new trial were granted. ***Commonwealth v. Cox***, 146 A.3d 221, 227 (Pa. 2016). When reviewing [the trial court's] December 1, 2021, Opinion, the standard [the court] used to deny [Appellant's] after-discovered evidence claim is almost identical to the standard described above. (12/1/21 Opinion, p. 5). Therefore, we conclude that [Appellant's] claim is not reviewable under the PCRA because it clearly has been previously litigated.

Assuming *arguendo* this claim was reviewable, we further conclude no relief would be warranted as the testimony of C.O. Oliver, had he been called to testify, would have been offered **solely for impeachment** of Nelson's testimony. As such, the third prong of eligibility on the basis of after-discovered evidence pursuant to ***Cox*** would fail.

PCRA Court Opinion, 11/14/23, at 10 (emphasis added); ***see also*** Trial Court Opinion, 12/1/21, at 6 (concluding any proposed evidence from C.O. Oliver "served no purpose except to impeach Nelson's testimony, and it is unlikely that such evidence would change the outcome of the trial. C.O. Oliver's testimony would have only impeached a relatively small part of Nelson's testimony. It would not have addressed Nelson's claim that [Appellant] had threatened him directly.").

Our review discloses the PCRA court's foregoing reasoning is supported by the record and the law. Accordingly, Appellant's final ineffectiveness claim merits no relief. **See** PCRA Court Opinion, 11/14/23, at 10; **Travaglia**, 661 A.2d at 356.

Based on the foregoing, we conclude the PCRA court did not err or abuse its discretion in denying Appellant's first PCRA petition. Therefore, we affirm.

Order affirmed.

Judgment Entered.

_____

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/17/2024